UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| EDWINA D. CORRELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:08-CV-280 |
| | ) (PHILLIPS/GUYTON) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 9 and 10] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14]. Plaintiff Edwina D. Correll seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On July 6, 2004, the Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income, claiming a period of disability which began September 19, 2003. [Tr. 17]. After her application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On August 30, 2006, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 17]. On October 27, 2006, the ALJ found that Plaintiff was not disabled. [Tr. 23]. The Appeals Council denied Plaintiff's request for review; thus

the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

**I.      ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2008.

2. The claimant has not engaged in substantial gainful activity since September 19, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: asthma, degenerative disk disease in the cervical spine, right shoulder impairment, dysthymia, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at all levels of exertion, with extra cushioning for sitting, avoiding reaching overhead with the right arm more than occasionally. She can complete simple and low-level detailed tasks despite increased symptoms. She cannot effectively interact with the public and will have some, but not substantial, difficulty interacting with the public and co-workers. She would work better with things than people. She can adapt to infrequent changes and set limited goals.

6. The claimant is capable of performing past relevant work as an assembly worker, which was light, unskilled work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a "disability," as defined in the Social Security Act from September 19, 2003 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

2

[Tr. 19-22].

## II. DISABILITY ELIGIBILITY

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors

3

(age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III.  STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y. of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

4

Case 3:08-cv-00280-TWP-HBG   Document 15   Filed 07/22/09   Page 4 of 16   PageID #: 70

## IV. ANALYSIS

On appeal, the Plaintiff argues that substantial evidence does not support the ALJ's disability determination. The Plaintiff alleges a number of errors, all of which relate to the Plaintiff's overarching contention that the ALJ's residual functional capacity determination of the Plaintiff's mental health was not supported by substantial evidence. Specifically, the Plaintiff contends the ALJ erred by: (A) making an internally inconsistent RFC summary and hypothetical; (B) discounting the opinion of Jack Roberts, M.D., ("Dr. Roberts"), a treating physician; and (C) discounting the opinion of Cynthia Grimm, ("Ms. Grimm"), a licensed clinical social worker ("LCSW"). [Doc. 10]. The Commissioner, in response, contends substantial evidence supports the ALJ's disability determination. [Doc. 14].

### A. The RFC Summary and Hypothetical

The Plaintiff first alleges that the ALJ's RFC determination is not supported by substantial evidence because it is internally inconsistent. [Doc. 10 at 9]. The Commissioner argues that the statement, and the materials underlying it, sufficiently express the ALJ's finding that the Plaintiff would have significant difficulty interacting with the public. [Doc. 14 at 8].

The RFC determination is as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at all levels of exertion, with extra cushioning for sitting, avoiding reaching overhead with the right arm more than occasionally. She can complete simple and low-level detailed tasks despite increased symptoms. She cannot effectively interact with the public and will have some, but not substantial, difficulty interacting with the public and co-workers. She would work better with things than people. She can adapt to infrequent changes and set limited goals.

[Tr. 20].

5

Case 3:08-cv-00280-TWP-HBG   Document 15   Filed 07/22/09   Page 5 of 16   PageID #: 71

The Plaintiff argues that the third sentence of the RFC determination is internally inconsistent because it states first that the Plaintiff cannot "effectively interact with the public" and then states that the Plaintiff would have "some, but not substantial, difficulty interacting with people." The Commissioner admits that the statement is somewhat unclear, but the Commissioner maintains that it suggests that overall the Plaintiff would adjust better to a job requiring less interaction with people. The Commissioner directs the Court to the ALJ's phrasing of the RFC in his hypothetical to vocational expert ("VE") Ernest W. Brewer, PhD, ("Dr. Brewer"). When directing the RFC hypothetical to Dr. Brewer, the ALJ stated that the Plaintiff would have "some, if not substantial difficulty, interacting with the public and co-workers." [Tr. 485].

The Court agrees with the Defendant that to the extent there is a discrepancy, it is the latter, more clear formulation that actually underlies the ALJ's disability determination because it was the formulation presented to the VE at the hearing. Further, the Court finds that either version of the formulation expresses a general recognition that the Plaintiff's ability to interact with the public is seriously constrained. This restriction on social interaction is consistent with and incorporated into the ALJ's finding that the Plaintiff was capable of performing past relevant work as an assembly worker, work which requires little social interaction.

Accordingly, the Court finds that the RFC determination recognizes that the Plaintiff is seriously limited in her ability to interact socially, and the Court finds that the somewhat poor semantics used in expressing this finding do not undermine its evidentiary base. Further, the finding was properly incorporated into the final determination that the Plaintiff was not disabled because she could perform her prior work as an assembly worker.

6

**B.     The Opinion of Cynthia Grimm, LCSW**

The Plaintiff contends that the ALJ did not accord proper weight to the opinion of Ms. Grimm, a licensed clinical social worker, and did not properly explain his decision to discount Ms. Grimm's opinion. [Doc. 10 at 10]. The Commissioner maintains that the ALJ properly discounted Ms. Grimm's opinion. [Doc. 14 at 8].

The evidence of record demonstrates that Ms. Grimm treated the Plaintiff on an initial visit to Cherokee Health Systems on November 16, 2004. [Tr. 276-78]. Though the Plaintiff has indicated that she saw Ms. Grimm often, the evidence of record does not contain any further notes from Ms. Grimm until two years later. On August 24, 2006, Plaintiff's counsel sent Ms. Grimm a copy of Listing 12.06 of 20 C.F.R. 404, Subpart P, Appendix 1, and when asked whether she believed that the Plaintiff's impairments met the requirements contained in Section 12.06, Ms. Grimm affirmed that she did. [Tr. 429]. In the space provided for objective findings to support this opinion, Ms. Grimm stated, "Edwinna has reported tension, apprehensiveness, and constantly scanning her environment. Edwinna has also reported [symptoms] of panic attacks, has marked distress which is driven by obsessive thoughts. [Client] avoids social situations [and] marked restriction in [activities of daily living]." [Tr. 429].

In his decision, the ALJ addressed Ms. Grimm's opinion and explained, "[Claimant's] counselor indicated that she had reported tension, apprehensiveness, and constant scanning, panic attacks, marked distress, and obsessive thoughts. She reported marked restrictions in activities of daily living (Exhibit 13F). Based on the claimant's self-reports, the licensed clinical social worker indicated that she met listing 12.06." [Tr. 20-21].[1] After reviewing other medical evidence in the

---

[1] The Plaintiff argues that the ALJ addresses Ms. Grimm's opinion exclusively in a statement about a physician and nurse practitioner's reliance on self-reporting. [Doc. 10 at 11

7

record, the ALJ concluded that the claimant's statements about the severity of her impairments were not entirely credible, and thus, the opinions based upon the Plaintiff's statements were also less than reliable. The ALJ explained:

> There is nothing in the treatment notes to support such severe limitations. Virtually all limits are by self-report only. . . . The claimant's appearance indicated a higher [level of] functioning as she was tan and healthy looking. She informed the consulting psychologist that she had applied for jobs but was not hired due to the medication she takes.

[Tr. 21].

Initially, the Court notes that the determination of whether a claimant meets the statutory definition is reserved exclusively for the Commissioner, and thus, the ALJ. The opinion given by Ms. Grimm states that the Plaintiff meets a listed impairment, and thus, effectively, purports to make a disability determination. As the applicable regulations instruct claimants:

> Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

Thus, any argument by the Plaintiff that Ms. Grimm's opinion could, *per se*, establish the existence of a listed impairment fails, but the Court will analyze the Plaintiff's contention that the ALJ's decision to discount the opinion was not supported by substantial weight.

The weight accorded to an opinion depends upon the professional qualifications of the source. Medical and osteopathic doctors and licensed or certified psychologists are classified as

---

citing Tr. 22]. However, the Court finds that the ALJ's statement cited herein refers to Ms. Grimm's opinion because, not only does it summarize her opinion almost verbatim, it also refers to the exhibit number associated with the opinion form Ms. Grimm completed.

8

"acceptable medical sources." SSR 06-03p at *1. In contrast, nurse practitioners, physician assistants, and licensed clinical social workers are considered "other medical sources." Id. at *2. Only an "acceptable medical source," i.e. a physician, can be a treating source and be given controlling weight. Id. When determining the weight that should be accorded to any medical source, the ALJ is to consider: whether the relationship is an examining relationship; whether the relationship is a treating relationship; the length, nature, and extent of treatment; the supportability of the opinion; the opinion's consistency with other evidence in the record; specialization; and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d) and 416.927(d).

In the present case, Ms. Grimm was not an "acceptable medical source," and thus, her opinion is never entitled to controlling weight. However, Ms. Grimm is a medical source, and the Court must determine the proper weight to be accorded to Ms. Grimm's opinions by employing the factors outlined in 20 C.F.R. §§ 404.1527(d), 416.927(d). Looking at the first factor, Ms. Grimm did examine the Plaintiff, which weighs in favor of according her opinion weight. Nonetheless, while this factor weighs in favor of according more weight to Ms. Grimm's opinion, all the other factors found in § 404.1527(d) argue against such weight.

As the ALJ pointed out, Ms. Grimm's opinion was merely based upon the Plaintiff's self-reporting and was inconsistent with both the Plaintiff's presentation and the record as a whole. Therefore, neither the consistency nor the supportability factors weigh in favor of according Ms. Grimm's opinion weight. § 404.1527(d)(3)-(4). In addition, Ms. Grimm does not have a specialized degree in psychology or psychiatry, and the specialization factor weighs against according her opinion weight. Looking at the final "other factors" consideration, the Court observes that Ms. Grimm's "opinion" that the Plaintiff met Listing 12.06 consisted merely of checking a "Yes" box

9

on a cover sheet that noted that a description of Listing 12.06 was attached, and as the ALJ observed, all of the objective evidence cited by Ms. Grimm was based upon self-report. [Tr. 21-22]; [see Tr. 429 (describing all of the "objective findings" as symptoms the Plaintiff had reported).

Finally, looking at the evidence of record, none of the treatment factors–length, nature, or extent–weigh in favor of according the opinion additional weight. However, for the reasons more fully explained below, the Court has concluded, that regardless of whether a treatment relationship actually existed, the above described considerations constitute substantial evidence in favor of the ALJ's decision.

Accordingly, and based on the foregoing, the Court finds that the ALJ's decision to discount Ms. Grimm's opinion is supported by substantial medical evidence.

In a related argument, the Plaintiff maintains that the ALJ was obligated to seek additional evidence from Ms. Grimm[2] *sua sponte*. As 20 C.F.R. § 404.1512(e) explains, the ALJ must, in some instances, contact a "medical source to determine whether the additional information [the ALJ needs] is readily available." However, § 404.1512(e) explains that additional evidence will only be sought where the ALJ seeks "additional evidence or clarification from [the] medical source when the report from [the] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or [the report] does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."

---

[2]The Plaintiff intermingles her discussion of Ms. Grimm's opinion with a discussion of records from psychiatrist David Snow, M.D. ("Dr. Snow"). [Doc. 10 at 11]. However, a review of the Plaintiff's argument makes it clear that the Plaintiff is advocating for additional weight to be accorded to Ms. Grimm's opinion, not Dr. Snow's. For example, she states, "Had proper weight been accorded to the opinion of LCSW Grimm, a finding of disability could have been reached." [Doc. 10 at 12]. Accordingly, the Court has addressed the weight accorded to Ms. Grimm's opinion.

The Plaintiff cites the Court to Perez v. Chater, 77 F.3d 41 (2d Cir. 1996), a case noting an ALJ's duty to develop the record but affirming the ALJ's decision even where the ALJ did not seek further records from a number of treating physicians. See also Newton v. Apfel, 209 F.3d 448, 457 (5th Cir. 2000) (discussing the duty to make further attempts to obtain records from a treating physician). The Commissioner directs the Court to Lance v. Comm'r of Soc. Sec., 1995 WL 723160 (6th Cir. Dec. 6, 1995), for the proposition that a plaintiff must direct the court to evidence that would have been submitted in support of his or her claim. Id. at *1.

The Court has considered the case law presented, but looking at the statutory language and the ALJ's decision, the Court finds that there was no "conflict or ambiguity" or lack of necessary information which required the ALJ to make further inquiry. As previously stated, the ALJ's decision to discount Ms. Grimm's opinion was based upon the unsupported nature of the opinion and its inconsistency with other evidence in the record. The Plaintiff testified at the hearing that she saw her counselor, presumably Ms. Grimm, regularly, and while this testimony may have put the ALJ on notice that additional records could be outstanding, this evidence was not necessary. It was not necessary because the ALJ's decision was not based upon the Plaintiff's treating relationship with the Plaintiff or lack thereof.

Further, reversal of an ALJ's decision is only appropriate where a claimant shows that prejudice resulted from the ALJ's failure to request additional information. Newton, 209 F.3d 448, 458; Sheffer v. Barnhart, 45 Fed. Appx. 644, 645-46 (9th Cir. 2002). Even assuming that additional records would have documented a treating relationship, Ms. Grimm's opinion would not be entitled to controlling weight because she is not a physician or "acceptable medical source." Substantial evidence would still support the ALJ's decision to discount Ms. Grimm's opinion because the

11

opinion itself, submitted just a week before the hearing, relies almost exclusively on self-reporting, despite any additional records that might exist, and because the opinion is inconsistent with the evidence of record. Thus, the Court concludes that the Plaintiff has failed to demonstrate prejudice.

The Court also notes that, as in Lance, 1995 WL 723160, the Plaintiff has cited the Court to no additional evidence that she would have submitted upon further inquiry by the ALJ. Plaintiff's counsel also submitted Ms. Grimm's opinion regarding Listing 12.06 no more than a week before the hearing [see Tr. 429] without submitting any other supplementary records. In addition, Plaintiff's counsel voiced no objections to the evidence in the record when asked if the Plaintiff had any objections to the evidence at the hearing [Tr. 463]. See Maes v. Astrue, 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record-indeed, to exhort the ALJ that the case is ready for decision-and later fault the ALJ for not performing a more exhaustive investigation.")

Accordingly, the Court finds that the ALJ did not err by failing to make further attempts to obtain records from Ms. Grimm because no additional evidence was "necessary" to his decision, and further, any failure to obtain additional records would be harmless as the evidence currently in the record provides substantial support for the ALJ's decision.

**C.     The Opinion of Jack Roberts, M.D.**

Finally, the Plaintiff maintains that the records of treatment from Dr. Roberts document persistent ailments including: fatigue, major depressive disorder, generalized anxiety disorder, weight loss, nervousness, excessive worry, crying spells, insomnia, loss of appetite, decreased energy, panic attacks, headaches secondary to stress, agitation, hostility, history of abuse, adjustment disorder, and irritability. [Doc. 10 at 14]. The Plaintiff directs the Court to a medical

12

assessment form evaluating the Plaintiff's mental abilities, which was completed by Dr. Roberts on March 10, 2005, and maintains that the ALJ did not afford the contents of this assessment sufficient weight. [Tr. 372-73].

In his decision, the ALJ explained why he discounted Dr. Roberts's opinion by stating the following:

> The treating physician is not a mental health specialist. The opinions of the doctor and the nurse practitioner were based on the claimant's self report and the treatment notes from these sources do not support their opinions except by the above mentioned self reporting by the claimant.

[Tr. 22].

Pursuant to 20 C.F.R. § 404.1527(d)(2) and 404.927(d)(2), a treating source's opinion about the nature and severity of an impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. As the ALJ stated, Dr. Roberts did not specialize in mental health treatment, and Dr. Roberts, himself, noted that the Plaintiff was seeing Dr. Snow for her mental health issues [Tr. 281]. Thus, the extent to which he can be a treating physician on a mental health impairment is questionable. See Mills v. Astrue, 226 Fed. App'x. 926, 931 (11th Cir. 2007) (holding that a physician, who treated the claimants back problems but did not specialize in mental health, was a non-treating, non-specialist doctor for purposes of determining the proper weight to be afforded to his opinion).

However, even assuming that Dr. Roberts's was a treating physician for purposes of the Plaintiff's mental disorder, there is substantial evidence to support the ALJ's finding that Dr. Roberts's opinion was not well-supported by medically acceptable evidence. As the ALJ observed, Dr. Roberts's opinion was based upon the Plaintiff's self-reporting rather than acceptable clinical

13

Case 3:08-cv-00280-TWP-HBG   Document 15   Filed 07/22/09   Page 13 of 16   PageID #: 79

and laboratory diagnostic techniques. [See Tr. 287, 301, 304]. Self-reporting is subjective evidence and does not constitute acceptable clinical and laboratory diagnostic techniques. The ALJ's decision that Dr. Roberts's opinion is not well-supported by medically acceptable evidence is supported by substantial evidence in the record, and because the opinion was not well-supported it was not entitled to controlling weight.

Where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). While the Plaintiff saw Dr. Roberts over a period of several years, she saw him as a general practitioner, for complaints such as a broken toe, an ovarian cyst, congestion, and, consistently, for high blood pressure. Thus, the length and frequency of the relationship is undermined by the fact that most visits dealt primarily with a new ailment. As explained above, the specialization factor and supportability factor also weigh against according this opinion weight.

Further, Dr. Roberts's opinion that the Plaintiff had basically no ability to make occupation adjustments, no ability to follow even simple instructions, and no ability to relate in social situations or in an emotionally stable manner is inconsistent with the evidence of record. The Plaintiff testified at the hearing before the ALJ that she is able to go to a restaurant a couple times a week to socialize and grocery shop with her husband or mother-in-law. [Tr. 473-74]. While the evidence in record supports, as the ALJ noted, a finding that the Plaintiff's ability to interact socially is limited, the limitations indicated by Dr. Roberts would entirely exclude the Plaintiff from social interaction and

14

such exclusion is not supported by or demonstrated in the evidence of record.

Finally, looking at other factors which tend to support or contradict the opinion, the Court notes that Dr. Roberts's opinion regarding the extreme constrains on Plaintiff's ability to work and socialize are contained in a medical assessment form, in which Dr. Roberts checked the "poor/none" box next to all but two of the described activities. In support of these severe restrictions, Dr. Roberts simply made the notation "GAD, MDD" [generalized anxiety disorder, major depressive disorder], without citing any objective evidence or findings to support the diagnoses and restrictions.

After reviewing the evidence of record and the ALJ's decision in light of the pertinent regulations, 20 C.F.R. §§ 404.1527(d) and 416.927(d), the Court finds the ALJ's decision to discount Dr. Roberts's opinion was supported by substantial evidence, and assuming, *arguendo*, that Dr. Roberts is a treating physician for the purposes of the Plaintiff's mental health conditions, the Court finds that the ALJ gave "good reasons" for discounting his opinion, §§ 404.1527(d)(2) and 416.927(d)(2).

## V. CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing work at all levels of exertion with the specified physical restrictions and in positions that required limited social interaction. Substantial evidence supports

the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[3] that Plaintiff's Motion For Summary Judgment **[Doc. 9]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 13]** be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).